UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NUMBER 18-0321** |
| **vs.** | * | **JUDGE TERRY A. DOUGHTY** |
| **DERRICK ANTONIO HALL** | * | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to suppress filed by Defendant Derrick Hall. [doc. # 29]. For reasons explained below, it is recommended that the motion be **DENIED**.

### Background[1]

The testimony and evidence gleaned at the hearing on the defendant's motion to suppress are as follows.

On July 20, 2018, Hall parked a Buick LeSabre at a Texaco station on Desiard Street in Monroe, LA. He left the engine running and music playing while he went inside the station store. A few minutes later, two Monroe Police Department Officers, Tim Antley and Jesse Huckaby, arrived at the station in separate vehicles.

When Officer Huckaby exited his patrol car, he heard loud music coming from the Buick and did not see anyone inside the car. He stood a few feet away and waited for the driver to return. Hall soon left the station store, walked to the Buick, and sat in the driver's seat. Officer

---

[1] The underlying facts in this case are taken from Defendant's motion to suppress [doc. # 29], the Government's opposition to Defendant's motion to suppress [doc. # 31], and testimony and body camera footage introduced into evidence at the April 11, 2019 suppression hearing. [*See* docs. # 32–35].

Huckaby followed Hall to the vehicle. As he did so, he smelled marijuana, and the odor became stronger as he walked closer to the vehicle. Officer Huckaby stepped inside the open driver's door, asked Hall for his driver's license, and explained he was stopping Hall for the loud music and unattended vehicle. Officer Huckaby then observed a clear plastic bag in the inside pocket of the driver's door that contained what he suspected to be marijuana. He removed the marijuana from the vehicle and continued to detain Hall. Officer Huckaby advised Hall of his *Miranda* rights and began preparing a ticket for possession of marijuana.

While preparing the ticket, Officer Rakeida Brothers arrived at the scene, and Officer Huckaby requested that she search the vehicle. Hall denied consent to search, but Officers Huckaby and Antley advised him they did not need his consent because they already found marijuana inside the vehicle. During a search of the vehicle, Officer Brothers uncovered a gun underneath some t-shirts on the floorboard behind the driver's seat. Officer Brothers radioed dispatch and confirmed that the gun had been reported stolen. Hall was then formally arrested.

On March 22, 2019, Hall filed the instant motion to suppress evidence arising from the traffic stop. He claims the officers (1) had no reasonable suspicion to justify the initial stop or continue the detention; and (2) had no probable cause to search his vehicle. [doc. # 29-1].

On April 5, 2019, the Government filed its response claiming (1) there was reasonable suspicion that Hall had violated noise and vehicle laws to justify the initial stop; (2) additional reasonable suspicion of drug activity developed during the stop to justify the continued detention; and (3) probable cause justified the automobile search because Officer Huckaby smelled and saw marijuana in the vehicle. [doc. # 31].

A suppression hearing took place on April 11, 2019, with testimony from Officers Huckaby and Brothers. The Government also introduced into evidence Officer Huckaby's and Officer Brothers' body camera footage of the stop and search. [*See* doc. # 35].

**Standard of Review**

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The protections of the Fourth Amendment extend to the states through the Fourteenth Amendment. *Dunaway v. New York*, 442 U.S. 200, 207 (1979).

"The proponent of a motion to suppress has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights." *United States v. Iraheta*, 764 F.3d 455, 460 (5th Cir. 2014) (citations omitted). Generally, "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search or seizure. This prohibition applies as well to the fruits of the illegally seized evidence." *United States v. Wallace*, 885 F.3d 806, 810 (5th Cir. 2018) (quoting *United States v. Calandra*, 414 U.S. 338, 347 (1974)). The purpose of this exclusionary rule is to deter unlawful police conduct: by refusing to admit evidence gained as a result of conduct that deprives the defendant of some right, "the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of the accused." *United States v. Pope*, 467 F.3d 912, 916 (5th Cir. 2006) (quoting *United States v. Leon*, 468 U.S. 897, 919 (1984)). However, the exclusionary rule is not without limits, and suppression of evidence should be "ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Id.*

3

**Discussion**

**I.     Traffic Stop**

A traffic stop constitutes a seizure under the Fourth Amendment, and its legality is analyzed under the framework set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). Under *Terry*, a court determines the reasonableness of a traffic stop by examining "whether the officer's action was: (1) 'justified at its inception'; and (2) 'reasonably related in scope to the circumstances which justified the interference in the first place.'" *Id.* (quoting *Terry*, 392 U.S. 19–20).

Under the first prong, a traffic stop is justified at its inception when an officer has a reasonable suspicion that "some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *Id.* Reasonable suspicion exists when officer has "a particularized and objective basis for suspecting legal wrongdoing" based on the totality of the circumstances. *Id.* (internal quotations omitted). An officer must be able to "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure." *Id.* Although "reasonable suspicion need not rise to the level of probable cause," a "mere hunch will not suffice." *Id.*

Further, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of [a stop or] arrest are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense." *United States v. Zavala*, 541 F.3d 562, 575 (5th Cir. 2008) (citations omitted).

Under the second prong of *Terry*, the detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004). During the course of the stop, "a police officer may permissibly examine the driver's license and registration and run a computer check on them to investigate whether the driver has any outstanding warrants and if the vehicle is stolen." *Lopez-Moreno*, 420 F.3d at 430. An officer may also ask the driver questions unrelated to the purpose of the stop. *Id.* at 431. "Once a computer check is completed and the officer either issues a citation or determines that no citation should be issued, the detention should end and the driver should be free to leave." *United States v. Santiago*, 310 F.3d 336, 341–42 (5th Cir. 2002). However, "if additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled, then the detention may continue until the new reasonable suspicion has been dispelled or confirmed." *Lopez-Moreno*, 420 F.3d at 431.

Hall claims the police officers had no reason to stop him, and he "was targeted and the officers were simply harassing him." [doc. # 29-1 at 2]. Further, he claims the circumstances surrounding his initial encounter with the police officers "do not give rise to the requisite reasonable suspicion justifying continued detention of the Defendant after the initial traffic/convenience store stop was initiated." (*Id.* at 3).

The Government responds that "Officer Huckaby had a reasonable suspicion of criminal activity when he stopped" Hall because he could hear loud music emanating from the Buick parked nearby, which is a violation of La. R.S. 14:103.1, and he observed that the vehicle had been left idling with no one inside, which is a violation of La. R.S. 32:145. [doc. # 31 at 7]. Further, the Government claims that "during the stop, the initial suspicion ripened into probable

5

cause" when Officer Huckaby smelled marijuana emanating from the Buick and observed a clear plastic bag containing marijuana in an open pocket of the driver's door. (*Id.* at 10).

Officer Huckaby testified that when he arrived at the gas station and exited his patrol car, he heard music coming from the Buick, which he believed to be too loud. He did not see anyone inside the vehicle and waited for the driver to return. When Hall returned to the vehicle and sat in driver's seat, Officer Huckaby approached. Officer Huckaby testified that he smelled marijuana, and the odor got stronger as he walked closer to the vehicle. He then saw what he suspected to be marijuana in a clear bag in the pocket of the driver's door. At this point, he had Hall stand at the rear of the vehicle and continued to detain him.

In this case, the initial stop was reasonable because Officer Huckaby had a particularized and objective basis for suspecting a traffic violation had occurred when he heard loud music coming from Hall's vehicle and observed that the vehicle was idling and unattended, both of which are traffic violations under Louisiana law. Further, once he smelled the marijuana coming from the vehicle and observed the bag of marijuana inside the vehicle, Officer Huckaby had additional reason to suspect criminal activity, making it reasonable to extend the stop. Accordingly, the traffic stop did not violate Hall's Fourth Amendment rights.

**II.     Vehicle Search**

Under the automobile exception to the warrant requirement, "[l]aw enforcement may conduct a warrantless search of an automobile if (1) the officer conducting the search ha[s] probable cause to believe that the vehicle in question contain[s] property that the government may properly seize; and (2) exigent circumstances justif[y] the search." *United States v. Banuelos-Romero*, 597 F.3d 763, 767 (5th Cir. 2010) (citations and internal quotation marks omitted). This exception applies when a vehicle "is found stationary in a place not regularly used

6

for residential purposes"—such as a gas station or convenience store parking lot—because the vehicle is "readily mobile by the turn of an ignition key," and there is a reduced expectation of privacy for vehicles due to the "governmental need for regulation." *California v. Carney*, 471 U.S. 386, 392–93 (1985). Thus, "as long as the vehicle is readily mobile, probable cause *alone* suffices to justify a warrantless search of a vehicle lawfully parked in a public place, as long as the scope of the search is reasonable." *United States v. Cooper*, 949 F.2d 737, 747 (5th Cir. 1991) (citations omitted). Probable cause to search a vehicle "depends on the totality of the circumstances viewed in light of the observations, knowledge, and training of the law enforcement officers involved in the warrantless search." *United States v. McSween*, 53 F.3d 684, 686 (5th Cir. 1995) (internal quotations omitted).

In this case, probable cause to search the Buick arose once Officer Huckaby smelled marijuana emanating from the vehicle and observed a clear plastic bag containing marijuana inside the vehicle. The Fifth Circuit has repeatedly held that the smell of marijuana alone is enough to establish probable cause. *See, e.g.*, *id.* at 686–87 (collecting cases); *United States v. Reed*, 882 F.2d 147, 149 (5th Cir. 1989) (finding that officers detecting the "distinct odor of burnt mari[j]uana . . . justified the subsequent search of [Defendant's] vehicle"). Likewise, an officer's observation of marijuana in plain view inside a vehicle provides probable cause for a warrantless search. *See United States v. Phillips*, 261 F. App'x 740, 741 (5th Cir. 2008).

"If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *McSween*, 53 F.3d at 687 (quoting *United States v. Ross*, 456 U.S. 798, 825 (1982)). Therefore, "if there is probable cause to suspect that the vehicle contains contraband, then the search may extend not

only to closed containers, but also to a car's trunk or glove compartment," or anywhere likely to contain contraband. *Id.* Here, once the officers had probable cause to search the vehicle, they were permitted to search anywhere in the vehicle, including the floorboard behind the driver's seat.

Accordingly, the warrantless search of the vehicle did not violate the Fourth Amendment, and the evidence seized as a result of the search should not be suppressed.

## Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that Defendant's motion to suppress [doc. # 29] be **DENIED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before making a final ruling.

**Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, shall bar an aggrieved party, except on grounds of plain error, from attacking on appeal the unobjected-to factual findings and legal conclusions accepted by the District Judge.**

In Chambers, at Monroe, Louisiana, this 15th day of April 2019.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE